Olangian. We'll hear from counsel for the appellant. Thank you, Your Honor. May it please the court. My name is Jonathan Edelstein. I am representing the defendant appellant Risa Olangian. As the court may be aware, this appeal was initially submitted on the The court ordered the parties to appear for oral argument. I assume that this order was entered because the court had particular questions. And therefore, rather than jumping into an argument, I would ask if there's something that the court would prefer me to talk about. May I say something just for myself, because we have not recently discussed this, but it's in of the principal reasons that we asked was not necessarily specific questions that we had in mind. But rather than the notion that the defendant, the appellant, having been sentenced to 25 years in prison, we thought it appropriate to have argument as well as briefs. At least that's the way I looked at it. But having said that, we can proceed in any way the presider would like us to proceed. Counsel, why don't you just give us your regular oral argument? Sure, Your Honor. Okay, what I would like to discuss first is the uncalled witness charge where over the defendant's objection, the court gave, charged the jury that the witness Mubariz, who is, was a government informant, was equally available to both sides and that the jury, that the jury was to... I read the uncalled witness charge. It didn't mention Mubariz by name, did it? No, it didn't mention him by name, but it mentioned... Was he the only witness who was uncalled? He was certainly, as far as I can tell, he was the only person who was mentioned materially at the trial who was not called as a witness. There may have been some other bit players here and there who were not called, but his name was all over the trial. I mean, he was the person who had first brought Mr. Olangian to the attention of the DEA in the first place. He was present at the I guess a deep cover informant would be a way to describe it. He was... This is, this is Judge Hall. So the, the issue that comes up then in the jury's mind that you, that defendant is trying to guard against as well, or wants the government tagged with is this guy's all over the testimony. Why didn't somebody call him? Why didn't you call him? But the question I have about this, because you want it specified, you want it limited essentially to be an uncalled witness and not one that's, that's equally available. How is, how was he available to the government any more than he was to the defendant? Well, first of all, the government was able to talk to him. The defendant wasn't. I mean, he... Well, but the case law cited in the brief talks about the practicalities of the situation. And here, the defendant didn't know his real identity. The only way he was able to contact Mubariz was through the government. He made two attempts to do that and was rebuffed. The second attempt was the week before trial. The government was evidently able to contact Mubariz and get an interview. Obviously, there is still open channels of communication between Mubariz and the government. Evidently, the government can hail him into court. Well, the government could have sought to take his testimony on commission under Rule 15. And certainly the government was able to interview and gain information from Mubariz, whereas the government wasn't able to hail him into court. There was, practically speaking, an imbalance in what the government is able to do with and get from Mubariz compared to what the defendant is able to do. But that's the case in many, you know, in many prosecutions. The government has somebody out there who's willing to talk to the FBI agent, but not, not to defense counsel. Well, and in those cases, I believe that, you know, the Kechia case would support a conclusion that the witness is under the conclusion of the government. I mean, the Kechia court says, quote, you know, where the witness, quote, had assisted the government as an informant and expressed unwillingness to speak to defense counsel before trial, unquote, the witness was not meaningfully available to the defense. And then the Kechia court said, well, the witness had ended his informant relationship with the government two years previously, and therefore had not, was no longer under the government's control. But here we have a witness who the government is able to talk to a week before trial, and who, for all we know, whether or not he's willing to testify, he may still be providing information. There are many informants who don't want to testify, but who continue being informants. Yeah, if they're in a foreign country or outside the reach of process, by which both the government and the defendant can bring somebody into court, what's the government to do? Why is he not equally unavailable? Although the government can talk to him, he's equally unavailable, both to the New York client and, and to the government. Well, I would say he's not judged because my client can't even talk to him. And if, if he had been in the United States, or he had been disclosed under his own name, maybe my client could have sent an investigator to see if he could approach the witness independently, but was not able to do that. And with you for a minute now. Excuse me. Can we shift to a different topic? Yes. Yes, Your Honor. I also see by the way that it's seven minutes in. So I just asked the court to take note of that. I was asked, I was asked to keep track of you're absolutely right, Mr. Adelstein. But we'll probably keep an eye on the clock as well as we do if we were live in the courtroom. Okay, so I'm more even better. You know, question. Okay, so the different what's the different topic? The question I want to ask about is, what is the, in your view, the best evidence that your client was prejudiced by the government essentially eliciting testimony about his truthfulness? Well, I, I would submit that this is a case where the defendant's credibility was all important, because on that, how does that, how, how, how does what occurred have an impact on the testimony on the testimony that the jury had to consider? Well, because two agents, the government elicited testimony from two agents that the defendant did not receive a cooperation agreement, because they considered him untruthful. That was brought up in summation. And it was the last note that the jury sent before the verdict, you know, before it issued a verdict had to do with the testimony of those agents. So obviously, the testimony of the agents was something important to the jury. And really, I mean, given the timing of the, the request, you know, shortly after the note was sent, the jury came in with a verdict. So that would seem to be what they were talking about at the time was the testimony of agents Higgins and Odney. And then also they, they specifically requested a readback of testimony regarding Mr. Olangian's cooperation. So that would seem to be what was on their mind shortly before they delivered the verdict. So certainly in a I mean, with the defendant is raising a defense that, you know, the government characterized as being out of a spine novel, and that, obviously, a jury might be skeptical of, and really, it hinges on the defendant's credibility, as well as the documents and photographs that he provided showing that he was indeed an agent. And so this testimony by two government witnesses that, hey, this guy's a liar, is something that is very strongly prejudicial to that defense is our as our review on this particular issue, for plain error. Um, I would, I believe that yes, it is, because this was not, you know, this testimony was not objected to. I'm sure that the reason for that was because the court case had not yet been decided at the time of trial. The counsel in this case was very able and made many objections. But I would have Richter that's been around, you know, by Judge Van Graff when that's been around, I won't say forever, because that's not close. I mean, this is a principle that's out there. As it hasn't been forfeited, because it wasn't. Well, I mean, even if it has been forfeited, it's still a it's still reviewable under plain error. And also the Richter case had to do with compelling at cross examining a defendant in a way that compels him to characterize government witnesses as lying. The court case was the opposite way where the government witnesses are characterizing another witness. In this case, a witness was also the defendant as as lying. And the Richter issue was objected to. So while the would agree that the acquired issue is, if only because the counsel in the court below didn't have the benefit of the acquired case at the time of trial. Thank you. Thank you, counsel. We'll turn to the government. Hello. Hello. You may proceed, counsel. Thank you, Your Honor. May it please the court. My name is Jared Schaefer, and I represent the United States of America on appeal. The defendant raises a number of issues, several of which we've already discussed, and several which were not preserved below. None of these issues warrants reversal and the court should affirm the defendant's convictions. I'd like to pick up with the raised. That is the uncalled witness charge. There was no error regarding the uncalled witness charge. As you pointed out, Judge Pooler, Mr. Morberix was not the only uncalled witness at the trial, to name just a few, about whom the defendant and others offered testimony. It would be his wife, Massoud, Baghi, Sarami, Garakul, and Essani. All of those were figures who figured largely in the story and about whom much testimony was offered, including hearsay testimony, because they were not present at trial. I would also note that Judge Hall is correct. The inquiry here is not necessarily would the informant have spoken to the government or would the informant not want to speak to the defense, but rather is that individual available to the government at trial? And that clearly was not the case here. It was a voluntary paid informant, but he was located outside of the United States. He was unwilling to provide testimony or attend the trial. The government had no way to compel his means. And as the court pointed out, or as defense counsel pointed out, there is a possibility of a Rule 15 deposition, but there's no guarantee the government would be able to compel that. And the defense could have done that as well. The defense did not seek that. I would also like to note that the defense's brief characterizes the ability to communicate with the defendant, or Mr. Morbritt, slightly differently than the record reflects. The government stated to the court that it had provided the contact information for Mr. Morbritt in the discovery, and that Mr. Morbritt indicated that he had not been contacted prior to the defense raising this again about a week before trial. So the record is actually reached out to this individual. The record is not equivocal on the fact that the defendant was not required to go to the government to contact this individual. He chose of his own free will not to respond to or speak with defense counsel, but the government had no control over that either. For those reasons, the court should conclude, as Judge Prescott did, that this witness was equally unavailable to both sides. I would also like to note that the defendant's testimony was not recorded. None of the conversations in which he was involved were recorded. Those transcripts and other recordings were entered at the trial, and there was no reason to believe that he would have given any evidence that would have been more favorable to the defendant as an informant for the government. I'd like to move it. Let me turn you, I don't know where you're going to move it, but I'll suggest, and perhaps you'll follow the suggestion, that we look at the DEA agent's testimony about the defendant's credibility. It seems to me the law has been pretty darn clear in this circuit for a number of years that that is a totally inappropriate line of inquiry. You agree it was error? I do not, Your Honor. I agree that the law is clear. You don't? If you would get on the stand, I mean, you would put a witness on the stand and ask him, you know, in a way that suggests that the government has formed outside of the courtroom some view as to a defendant's credibility and put that in front of the jury, and you think that's permitted by our case law? Certainly not, Your Honor. And in the ordinary case... Isn't that what happened here? No, Your Honor, that's not what happened here. So, the first thing to recognize here, I think, is that in context, this was a very different case from a court, and that began right at defense counsel's opening, where defense counsel asserted that the defendant's efforts to cooperate were themselves proof of innocence. I would also note that in defense counsel's opening, defense counsel said that the defendant had lied in those proffers. Specifically, defense counsel said that he had told a story that was not completely true. The government was responding to this argument that the cooperation itself, or efforts at cooperation, were in fact evidence that he was innocent. And the ship had already failed on that. So, while I completely agree that in a normal case, agents should not comment at all on the credibility of other trial witnesses... Well, prosecutors shouldn't ask agents to comment on, right? That's where we are in this. That's correct, Your Honor. I don't think that that's necessarily what happened here. I know, you're saying this is different from that specifically. So, proceed. Correct, Your Honor. And I think that, on the whole, the government certainly tries to adhere to the line that this court has drawn. I would also note that the comments that the agents gave were about the defendant's demeanor and candor during those proffer sessions, and not about his credibility generally or at trial. And just to underscore the point, in addition to defense counsel's opening, the defendant himself later testified, quote, if I'm guilty of anything, I'm guilty of lying. There is no monopoly unless the government has a monopoly on lying. Yes, I'm guilty, end quote. So, and after these questions, I don't think that there's any question raised in the briefing that the government properly focused cross-examination on showing the jury exactly how the defendant's proffer statements had evolved, the internal inconsistencies in his testimony, and discrepancies with other physical and forensic evidence. All of that is what a court calls for. I would also note that this case is different from a court because the government did not simultaneously accuse the defense of advancing inconsistent theories it did not believe. That was a key factor in a court, and in fact, a court held that this error that we're addressing now in this case, if error it be, was not enough to warrant reversal, and it was only the combination with additional errors. Would you remind me, though, because I just don't remember, when did Judge Preska give the, what I would call more or less standard charge that the determination of the credibility of witnesses is solely the province of the jury? Did she give that in the original charge, or was that supplemental? She gave it in the initial instructions, Your Honor, and she also gave it in her closing charge as well. Okay. You can continue. I'm sorry, Your Honor? Oh, thank you. You may continue. And unlike a court, again, here, arguing that cooperation was proof of innocence in its opening, the defense opened the door to evidence about the defendant's cooperation efforts, the government was obliged and permitted to respond that simply attempting to cooperate was proof of innocence. So there was no clear, obvious error here that affected the outcome of the proceedings in a manner that seriously affected the integrity or the public reputation of judicial proceedings as are required here. So responding to those two issues, I think those are the two issues that were discussed with the appellant. I would just note very briefly that the defendant was not compelled to comment on the agent's credibility. The challenge question that the defendant claims here was referring to whether agents had fabricated statements. And in any event, the defendant was never required to and did not answer that question. Judge Prescott also instructed the jury that questions themselves are not evidence. And the district court did not err by declining to interrupt the defendant's redirected testimony, nor did the district court err by properly denying the request for a mistrial. Were you, as is the Southern District's wont, were you involved in the trial of this case? I was not, Your Honor. You were not? Okay, thank you. So for those reasons, we think that you should affirm the defendant's conviction, and we don't think that any of the issues raised on appeal warrant reversal. If there are any further questions that the court has, I would be happy to address them. Otherwise, the government would rest on its grief. Thank you, counsel. Mr. Edelstein, you have three minutes for rebuttal. Thank you, Your Honor. On the court issue, first of all, the agent's testimony was not limited to demeanor. Agent Odney, for instance, testified, we didn't feel that the answers we were receiving were truthful, and we felt like there may be things omitted as well. That's in 236 of the appendix. Agent Higgins testified, he didn't seem as forthright, he didn't seem as he was wanting to explain all the information in detail, and then went on from there. That's at about 767 to 68. So they're not just talking about his demeanor or behavior or tone of voice. Agent Odney specifically said, we didn't consider his answers truthful. Second of all, to the extent that the government is claiming the defense opened the door, certainly the government was entitled to respond to that in opening an information. It would have been permissible, for instance, for the government to argue on summation that certain things the defendant said during the cooperation didn't match up with the rest of the evidence. In the opening statement, as the government said, did counsel for the defendant acknowledge that the defendant had lied? I believe he said that not everything the defendant said was true, which is a little bit different. Maybe we're splitting hairs, but okay, something tantamount to that. Did the defendant testify or say in his testimony, I admit I lied, or words to that? By that time, the horse had already left the barn, Judge. By that time, the agent's testimony was on the books. We don't know if that's what the defendant would have testified to if that testimony had not been on the books. I would submit that the government was certainly entitled to answer any argument about the defendant's cooperation by means of argument. If the defendant argues something, then the government can argue in response to it. However, it doesn't extend to eliciting testimony from government agents regarding the credibility of the defendant. I would submit that in that respect, this case was exactly like a court, and in fact, even worse than a court, because no curative instruction was issued, which was one of the things the a court court cited in finding that this was only reversible error in combination with another error. In addition, the witness whose credibility government agents commented on in a court was just a witness, whereas in this case, the witness is the defendant. This is the person whose guilt the jury is deciding on. When the jury weighs his testimony, they're weighing the testimony of a person fighting for his life and freedom. I would submit that yes, this is error underrequired, and yes, it did affect the defendant's substantial rights. Finally, to briefly go back to the issue of Mubariz, it is true, as the government said, that there were recordings of meetings in which he participated, but not all of those meetings were recorded. There were things that happened as well outside the recording in which Mubariz was a part. He was not able to provide information about that. Mubariz, or he the defendant? He Mubariz. Right. Maybe the better practice, but what's the standard by which we review an erroneous instruction under these circumstances? Well, I mean, it would be whether the instruction accurately conveys the law to the jury. And the jury charge taken as a whole essentially effects an injustice, right? Yeah. And this is Judge Kuhler. The party was certainly free to argue Mubariz's absence or presence, no matter what the charge was. They could have argued that in summation, couldn't they? Well, I mean, they could have argued it, but any argument to that effect would have already been nullified because the court had already told them it was going to instruct the jury not to draw any adverse inference against either party. So if the parties argued, if the defendant had argued in summation to draw an adverse inference by a formal Mubariz not being there, then the court's instructions would have nullified that argument. The prejudice here was in not letting the defendant make that argument and in providing instructions that prevented the jury from considering it. So I would submit that both that and the acquired error and the Richter error, certainly all of those in combination, prejudice this defendant and require a new trial. And if there's nothing further, I'm out of time. So the court, if there's nothing further from the court, I'll rest on the briefs. Thank you. Thank you both. We'll reserve decision.